UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

HEATHER HALL, on behalf of D.D.P., )
)
Plaintiff, )
)
vs. ) 3:16CV40-PPS
)
NANCY BERRYHILL, Acting Commissioner )
of the Social Security Administration,[1] )
)
Defendant. )

**OPINION AND ORDER**

Heather Hall appeals the Social Security Administration's final decision denying supplemental security income benefits for D.D.P., her minor child. That denial is in a written decision of an Administrative Law Judge, entered after a hearing at which both D.D.P. and Heather appeared and testified.[2] [AR 20-35; AR 42-74.]

The analysis of a claim for disability in a person under the age of 18 involves a three-step process. 20 C.F.R. §416.924(a). Because D.D.P. was not engaged in substantial gainful activity, the ALJ proceeded to the second step, which is consideration of whether D.D.P. had severe physical or mental impairments. [*Id*.] The

---

[1] On January 23, 2017, Nancy Berryhill became the Acting Commissioner of Social Security. Fed.R.Civ.P. 25(d) provides for Berryhill's automatic substitution in place of her predecessor, Carolyn Colvin.

[2] The administrative record [AR] is found in the court record at docket entry 13, and consists of 498 pages. I will cite to its pages according to the Social Security Administration's Bates stamp numbers rather than the court's Electronic Case Filing page number.

ALJ determined that D.D.P. had five severe impairments: ADHD, enuresis (involuntary urination), PTSD, encopresis (fecal incontinence), and phonological disorder. [AR at 23.] At the third step, a determination of disability depends on the conclusion that one or more impairments "meet(s), medically equal(s), or functionally equal(s)" the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 that conclusively establish disability. *See* 20 C.F.R. §416.924a.

In order to functionally equal the listings, a claimant's impairments or combination of impairments must result in "marked" limitations in two of the six "domains of functioning" or an "extreme" limitation in one domain. 20 C.F.R. §416.926a. The "domains" are "broad areas of functioning intended to capture all of what a child can or cannot do." *Id*. at §416.926a(b)(1). Children applying for disability benefits are compared to children of the same age who do not have impairments. *Id*. at §416.926a(b). D.D.P. was age five at the time of the application for benefits and age seven at the time of his hearing before the ALJ.

Let's be honest about it; the "domains" set out in the regulations are pretty mushy. The ALJ must consider are how the child (1) acquires and uses information; (2) how he attends and completes tasks; (3) how he interacts and relates with others; (4) how he moves about and manipulates objects; (5) how he cares for himself; and (6) his overall health and physical well-being. *Id.* at §416.926a(b)(1)(i)-(vi). In assessing these qualities, and given their subjective nature, the ALJ has a decided advantage over a district judge since the ALJ gets to actually talk with the child, albeit over video in this

2

case. It is for this reason that judicial review of an ALJ decision should be — and is — limited.

If an ALJ's findings of fact are supported by "substantial evidence," then they must be sustained. *See* 42 U.S.C. § 405(g); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In making a substantial evidence determination, I must review the record as a whole, but I can't re-weigh the evidence or substitute my judgment for that of the ALJ. *Overman*, 546 F.3d at 462.

The ALJ found that D.D.P. had marked limitation in the third domain, interacting and relating with others. [AR at 30.] The appeal in this case challenges the ALJ's determination that D.D.P. had less than marked limitation in the second domain—attending and completing tasks. [*Id*. at 29.] Generally speaking, the regulations describe this domain as one that relates to a child's ability to focus and maintain attention, the ability to begin, carry through and finish activities, the pace of performing activities and the ease with which the child changes activities. 20 C.F.R. §416.926a(h). As I mentioned above, applicants for disability are compared to typically developing children. For example, children between the ages of 3-6, as D.D.P. was at the time of his application, should be able to sustain their attention to play and learning activities and be able to concentrate on things like putting a puzzle together and

3

completing art projects. They would also be expected to be able to dress and feed themselves and put their toys away. *See* 20 C.F.R. §416.926a(h)(2)(iii). For a child who is between the ages of 6 - 12 they are obviously expected to be more advanced in attending and completing tasks. *See* 20 C.F.R. §416.926a(h)(2)(iv).

The evidence of record contained conflicting medical opinions concerning D.D.P.'s attention and ability to complete tasks. As the ALJ noted, non-examining state agency consultants Roush, Lovko, Thomas and McElhaney signed a Disability Determination Explanation in November 2012 in which they expressed a finding that D.D.P. had marked limitation in the domain of attending and completing tasks. [AR at 92.] In March 2013, other non-examining state agency consultants (Quant-Callendar and Cobb) also opined that D.D.P. was markedly limited in that domain. [AR at 83.] At other times, non-examining consultants (Gaddy, Unversaw and Hoke in one instance, and Roush, Clark and Thomas in another) concluded that D.D.P.'s limitation in the domain of attending and completing tasks was less than marked. [AR at 365, 350.]

Where the record contains conflicting medical evidence, as it did in this case, the Commissioner has the responsibility of resolving the conflict. *Murphy v. Astrue*, 454 Fed.Appx. 514, 518 (7th Cir. 2012), citing *Diaz v. Chater*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). This must ultimately be done by "giving more weight to some evidence and less to others," for reasons supported by substantial evidence. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *see also Latkowski v. Barnhart*, 93 Fed.Appx. 963, 973-74 (7th Cir. 2004).

4

Against this backdrop of divided opinion, the ALJ considered the opinion of consultative examiner Dr. Craig Nordstrom, who had actually met with and evaluated D.D.P. in person. [AR at 29.] Given the vague standards that guide the domain at issue—attending and completing tasks—it seems to me that Dr. Nordstrom had a decided advantage over the non-examining consultants. And after interviewing Ms. Hall and testing and observing D.D.P., Dr. Nordstrom reported that D.D.P. "was able to attend and concentrate very strongly." [AR at 404.] Dr. Nordstrom also noted that D.D.P. "was able to attend and concentrate quite well during the administration of the WPPSI-III," a test of cognitive ability for preschool age children. [AR at 405.] According to Dr. Nordstrom, D.D.P. had a full scale I.Q. of 94, which placed him in the average range of functioning. [AR at 404.] In administering the test, Dr. Nordstrom found that D.D.P. "was able to attend and concentrate very strongly." [AR at 404.]

The ALJ noted these and other aspects of Dr. Nordstrom's report, and contrasted them with Ms. Hall's testimony. [AR at 29.] Relevant to this domain of functioning, the ALJ also referenced notes of D.D.P.'s outpatient visit to Oaklawn Psychiatric Center on December 16, 2013, reflecting that D.D.P. (then age 6) answered questions appropriately, was attentive for some of the interview, and had previously had a good response to a drug called Focalin XR, used for treatment of attention deficit hyperactivity disorder. [AR at 29, 474.]

Without re-weighing the evidence, I can't second-guess the ALJ's conclusion that D.D.P.'s limitation in the area of attending and completing tasks was less than marked.

5

There was evidence both ways, and the ALJ considered substantial evidence of record to resolve the disagreement. Hall's criticism that the ALJ gave insufficient consideration to the comments of D.D.P.'s kindergarten teacher are effectively answered by the Commissioner's observation that the ALJ expressly gave "some weight" to Ms. Morris's letter, even though as a teacher she was not an "acceptable medical source" under applicable regulations. [AR at 29; *see* 20 C.F.R. §416.913(a)(2), 416.927(a)(2); SSR 06-03p.] Only acceptable medical sources can give medical opinions for the Commissioner's consideration, but information from other sources such as school teachers can be used to show the severity of an individual's impairment and how it affects a child-claimant compared to children without the impairment. 20 C.F.R. §416.913(d); SSR 06-03p. Hall fails to demonstrate that the ALJ's consideration of the teacher's information was in error and requires reversal.

Candidly, the ALJ's discussion of the issue now raised is not a model of cogent and comprehensive analysis. But on this issue I am not reviewing only the ALJ's explanation of her conclusion. The "supported by substantial evidence" standard is a deferential standard of review under which I consider the record as a whole. *Overman*, 546 F.3d at 462; *Yurt v. Colvin*, 758 F.3d 850, 856-57 (7th Cir. 2014). The ALJ expressly considered evidence contrary to her ultimate conclusion – the kindergarten teacher and Hall's testimony as D.D.P.'s mother – but found it outweighed by other evidence concerning D.D.P.'s response to medication for hyperactivity and the report of Dr. Nordstrom based on his examination of D.D.P. The decision provides enough

6

discussion to afford meaningful judicial review and permit an assessment of the validity of the ALJ's ultimate conclusion. *Yurt*, 758 F.3d at 856-57.

In sum, the ALJ sided with the *examining* medical professional—Dr. Nordstrom—over the contrary assessments of medical professionals who merely reviewed paperwork on D.D.P. In doing so, the ALJ reasonably resolved the conflict by reliance on the report of Dr. Nordstrom and evidence in the medical record suggesting that ADHD medicine offered help in that domain. I resist Hall's invitation to re-weigh the evidence, and instead determine that the ALJ's decision on the question raised by Hall's appeal is supported by substantial evidence and that the ALJ built an accurate and logical bridge between the evidence and her conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014).[3] The Commissioner's final decision must be affirmed.

**ACCORDINGLY:**

The final decision of the Commissioner of Social Security denying plaintiff Heather Hall's application for supplemental security income benefits on behalf of her minor son D.D.P. is AFFIRMED.

---

[3] To the extent any of my rationale or the Commissioner's argument before me could be considered at odds with *SEC v. Chenery*, 318 U.S. 80 (1943), I note that, by failing to file any reply to the government's brief, Hall has not invoked any limitations of *Chenery*. *Council for Urological Interests v. Burwell*, 790 F.3d 212, 235 (D.C. Cir. 2015) (Griffith, J., dissenting) (court should not address a *Chenery* challenge not placed before it by litigants); *Byers v. C.I.R.*, 740 F.3d 668, 681 (D.C.Cir. 2014) (refusing to consider a *Chenery* argument where the appellant failed to pursue the claim in the court below); *South Kingstown School Committee v. Joanna S.*, 773 F.3d 344, 355 n.5 (1st Cir. 2014) (court need not address *Chenery* doctrine not briefed by the parties).

The Clerk shall enter judgment against plaintiff and in favor of defendant.

**SO ORDERED**.

ENTERED: March 21, 2017

/s/ Philip P. Simon
**PHILIP P. SIMON, JUDGE**
**UNITED STATES DISTRICT COURT**
